2 So.2d 399

## GRISSETT v. STATE.

### 4 Div. 165.

Supreme Court of Alabama.

May 15, 1941.

Rehearing Denied June 5, 1941.

344

E. C. Orme, of Troy, for appellant.

Thos. S. Lawson, Atty. Gen., and John W. Vardaman, Asst. Atty. Gen., for the State.

FOSTER, Justice.

Appellant was convicted of murder in the second degree, and punishment fixed at thirty-five years in the penitentiary, for the killing of Hillary Killingsworth. Two other men, Truman Paul and Curtis Sanders, were killed in the same transaction. It does not appear whether he was also indicted for killing them.

The State, in making out its case, proved by a witness alleged to be present that defendant shot each of those three men, one after the other in rapid succession—only one shot for each—and that Killingsworth and Paul died immediately; Sanders was carried to a hospital and died a few days later. According to this witness the three men who were shot were unarmed and were not making any sort of assault on appellant.

At this time, the State introduced some pictures of the scene of the difficulty and then introduced the county coroner who testified that he took some pictures (photographs) at the funeral home of the dead bodies of Killingsworth and Paul, showing the location of the bullet hole in the chest of each a little on the left side. The pictures included the entire upper portion of the naked body from about the pit of the stomach, including the head, as each lay dead on a stretcher. Objection was made and overruled to each picture separately, and exception taken. The witness also testified that he was present when autopsies were performed on those bodies shortly afterwards by two doctors and their helpers. That a bullet was removed from the body of each of them. Those two bullets were identified and introduced in evidence. Objection was made especially to that one taken from the body of Paul, and was made to each step in the testi-

mony as to the bullets, and it was over-ruled and exception reserved. There was competent evidence that those bullets were thirty-eight caliber. Another of the same sort was said to have been found on the ground. An expert testified that those taken from the bodies of Killingsworth and Paul were shot from the same pistol, but the other was not. Compare, Sovereign Camp, W. O. W. v. Gunn, 224 Ala. 444, 140 So. 410.

Up to this point in the trial, there was no evidence of any confessionary statements by defendant, either that he did the shooting or did not, nor how it occurred. Later in the trial, the sheriff testified that he went there to the scene of the shooting that night and saw the dead bodies of Paul and Killingsworth, and that he arrested defendant and told him he wanted his gun; that defendant got it out of the store where the shooting occurred, and gave him a 32—20 Smith and Wesson, and told the sheriff to look at it that it had not been fired. That was not the gun which shot the bullets killing Paul and Killingsworth. Defendant later in the trial admitted killing all three men with a thirty-eight Smith and Wesson, claiming that one was killed by accident, and the other two in self-defense.

The questions so far presented, which need consideration, are the rulings on objections to the pictures of the dead bodies of Paul and Killingsworth, and especially of Paul since defendant is not being tried for killing him; also the rulings on objections to the thirty-eight caliber bullets taken from Paul and Killingsworth, respectively, and especially that taken from Paul. There is no serious question raised as to the admissibility and relevancy of the picture of Killingsworth, nor of the bullet taken from his body. But it is seriously insisted that the picture of Paul and bullet taken from his body are not relevant on a charge of murder for killing Killingsworth

■ At the time when this evidence was offered, the State had the burden of showing that defendant committed the act intentionally. All that then and there occurred was of course relevant and admissible, though it included the killing of others than the one named in the indictment, and though defendant may have committed other offenses than the particular one on which he was being tried. Smith v. State, 88 Ala. 73, 7 So. 52; Jackson v. State, 229 Ala. 48, 155 So. 581; 16 Corpus

Juris 574, section 1115; 22 Corpus Juris Secundum, Criminal Law, 1049, § 663, note 3.

■ The bullets taken from the two men then and there killed were admissible; also that they were shot out of the same pistol, all as material steps in the progress of developing the case.

■ There is only one feature of this situation that gives us any serious concern, and that is whether the picture of Paul sheds any light on any matter connected with the proper solution of the case or whether its only effect was to inflame the minds of the jury. The following is taken from 22 Corpus Juris Secundum, Criminal Law, page 1226, § 716: "In a prosecution for the killing or injuring of one person, wounds or scars on other persons resulting from the same transaction may be exhibited to the jury where they are relevant to a matter in issue, but not where they do not serve to throw light on any matter connected with the proper solution of the case and their only effect is to inflame the minds of the jury." See McKee v. State, 132 Tex.Cr.R. 67, 102 S. W.2d 1058; Newman v. State, 85 Tex.Cr. R. 556, 213 S.W. 651.

■ If the photographs had no reasonable tendency to prove or disprove some material fact in issue, or which at the time appeared to be probably in dispute or material, it was inadmissible. Compare, Birmingham Baptist Hospital v. Blackwell, 221 Ala. 225, 128 So. 389.

The same principle is controlling in respect to the introduction of clothing worn by a deceased in prosecuting such a charge. Weems v. State, 222 Ala. 346, 132 So. 711; Walker v. State, 223 Ala. 294, 135 So. 438; Crenshaw v. State, 225 Ala. 346, 142 So. 669.

While counsel admit this general principle, they contend that it does not apply to conditions relating to one who was shot and killed in the same transaction other than the deceased named in the indictment. The question depends upon whether the evidence throws light on any matter connected with the proper solution of the issues.

■ If this be not the legal status of the evidence, certainly the picture of Paul, which appears in the record is gruesome, tends to inflame the minds of the jury. But if it is relevant, it is admissible, however gruesome and prejudicial it may be.

346

Paul was undoubtedly killed at the same time. The bullet taken from his body tended to show that the same man who killed Killingsworth shot him also. The wound on the body of each of them was material to illustrate the act of killing them, and in interpreting the circumstances of it. The jury had a right to be able to see the situation as it occurred to the extent that it could be brought to them, and to meet any contention which defendant might probably make in defense. We cannot say that this picture was not material.

There were several objections made to the argument of the solicitor. The questions were duly raised. We have given them careful consideration. One is as follows: "It has not come from the witness stand that the defendant did not go out there with two pistols." The evidence tends to show that defendant had two pistols at the place of the shooting, one he gave to the sheriff which he did not use, and another which he did use. Another is as follows: "I am tired of murders, one after another in this district." This statement was not an abuse of the privilege of debate. Olden v. State, 176 Ala. 6, 58 So. 307; Ex parte State ex rel Davis (Tyler v. State), 210 Ala. 96, 97 So. 573; Floyd v. State, 22 Ala.App. 347, 116 So. 318, certiorari denied, 217 Ala. 326, 116 So. 320.

Another is as follows: "I want this in the record, that what I meant to say to the jury was that one of the defendant's character witnesses said that he had heard that the defendant had killed a negro and had shot two others, and another one of the character witnesses said that he had heard it back in his youth that he had stabbed another in the back." All that need be said is that there was evidence to support this statement.

During the oral charge of the court, the judge stated to the jury the various grades of the offense included in the indictment, and observed that he would later charge the jury as to self-defense; but he finished his charge without doing so. On his attention being called to this omission, he gave the jury a correct interpretation of the law of self-defense. The defendant thinks that this omission to charge on this subject, until his attention was called to it, tended to minimize its effect in the eyes of the jury, and was prejudicial to him, since his entire defense was that of self-defense, seriously and urgently insisted upon. We do not think

there was prejudice here shown defendant sufficient to justify a reversal of the judgment. The charge of the court in this respect was very full and explicit, and it cannot be said that he treated the subject lightly, though he at first overlooked giving instructions in that respect.

We have examined the entire record, and given attention to every exception reserved. Many were carefully argued in brief by appellant's counsel. The record shows an orderly and careful observance of all the rules of law which are applicable and required by law to be set out in it. We do not find in any of it a reversible error. The judgment is affirmed.

Affirmed.

GARDNER, C. J., and BOULDIN and LIVINGSTON, JJ., concur.